Argued February 1; affirmed February 20; rehearing denied
March 27, 1934

# SMITH *v.* PACIFIC NORTHWEST PUBLIC
# SERVICE CO. ET AL.

(29 P. (2d) 819)

*Cassius R. Peck,* of Portland (Griffith, Peck & Coke, of Portland, on the brief), for appellant.

*Paul R. Harris,* of Portland (Davis & Harris, of Portland, on the brief), for respondent Smith.

*E. L. McDougal,* of Portland, for respondent Consolidated Freight Lines.

424

BEAN, J. There are four assignments of error predicated upon the refusal of the court to give certain. instructions requested by appellant.

The original bill of exceptions, after quoting each requested instruction, shows as follows:

"The court refused to instruct the jury as requested in the foregoing instruction, and an exception was duly allowed to the refusal of the court to instruct the jury as requested by said defendant in said instruction."

Some time after the bill of exceptions was settled and allowed, on motion of plaintiff, who deemed that the bill of exceptions was not in accordance with the transcript of the record, the bill of exceptions was amended by order of the trial court by striking out the word "duly" as above quoted and so as to read, after setting forth each of the requested instructions, as follows:

"The defendant, Pacific Northwest Public Service Company (now Portland Electric Power Company) excepted to the refusal of the court to give said instruction to the extent and in the manner as evidenced by the following transcript record, pages 323, 324, and said exception was allowed to the extent and in the manner evidenced by said transcript record. Said record is as follows:

" 'Mr. Peck: I would ask a general exception to the refusal of the court to give the instructions requested by the defendant, Pacific Northwest Public Service Company, and to the modification of those instructions as requested and given.

" 'The court: Yes, you can have that.' "

The appellant requested some 37 instructions, only four of which requests are contained in the bill of exceptions.

The plaintiff and respondent, Consolidated Freight Lines, Inc., maintains that the exception taken by the appellant is only an exception to the refusal to charge the entire series of instructions and is not sufficient unless each one of the requested instructions is of itself sound. In other words, the respondents urge that the appellant did not except to the refusal of the court to give each of the instructions requested by the appellant.

The contention of the appellant is that it was the intention of the appellant and so understood by the

court and the parties to except to the refusal of the court to give each instruction and that in any event the settlement and allowance of the bill of exceptions is conclusive upon the question.

It will be noticed that the court allowed an exception to the refusal of the court to give each of the requested instructions set out in the bill of exceptions.

■ Section 2-704, Oregon Code 1930, provides: "The statement of the exception, when settled and allowed, shall be signed by the judge and filed with the clerk and thereafter it shall be deemed and taken to be a part of the record of the cause." The declaration of the trial court by a settlement and allowance of the bill of exceptions is conclusive upon this court.

In *Allen v. Standard Box & Lbr. Co.*, 53 Or. 10, 16 (96 P. 1109, 97 P. 555, 98 P. 509), this court unequivocally lays down the rule that it is the certification of the court in settling and allowing the bill of exceptions which is determinative of the exception. We quote from the opinion of former Chief Justice BEAN:

"It is claimed by the plaintiff that no proper exception was saved to the objectionable part of the instruction, and reference is made to a transcript of the stenographer's notes accompanying the bill of exceptions, in support of this position; but the court certifies that the instruction was duly excepted to, and this is conclusive here."

In *Kuehl v. Hamilton*, 136 Or. 240, 243 (297 P. 1043), Mr. Justice ROSSMAN, speaking for this court, declared:

"Although the transcript of the proceedings mentions no exception, yet since the bill of exceptions recites that which was allowed, we are bound to assume that the defendant disapproved of the rulings made by the court."

In the recent case of *Johnson v. Ladd*, 144 Or. 268 (14 P. (2d) 280), this court ruled:

"It is not enough to show that there is a discrepancy between the bill of exceptions and the transcript of the official reporter. As far as it appears it may be that, at a different stage of the trial or when the instructions excepted to were given, the counsel saved an exception and that this was overlooked in making the statement at the end of the trial."

It is a well-known practice that a memorandum made during the trial of a cause necessarily may be shorter and sometimes more general than a bill of exceptions when properly settled and allowed.

█ The respondents urge that the appellant at the time of taking the exception did not point out the merits of the requested instruction. When a party excepts to the giving by the court of any particular instruction, then the excepting party should point out the vice of the instruction. There is a fundamental difference between the giving of instructions to a jury and the refusal to give instructions. In one case the court acts affirmatively and if it is in error then attention should be called to such error in order that it may be corrected. In the other case the court has before it a requested instruction which speaks for itself and after considering the same refuses to give that instruction and the requesting party cannot be held to be bound to then and there advance every meritorious theory and submit every authority which might tend to show the instruction a proper one. See also *Lott v. De Luxe Cab Co., Inc.,* 136 Or. 349, 353, 354 (299 P. 303).

█ We come now to a consideration of the merits of the requested instructions number 21 and number 22 relating to the same subject and which are as follows:

"It was the duty of the defendant Consolidated Freight Lines, Inc., to have its said truck and trailer equipped with such brakes as would enable the driver

of the truck to stop it on a dry, hard, approximately level highway free from loose material at the distances hereinafter mentioned, to-wit: when operated at a speed of 10 miles per hour, the stopping distance for said truck upon proper application of the brakes should be 9.3 feet; 15 miles per hour, 20.8 feet; 20 miles per hour, 37 feet.''

''If you find from the evidence that the truck was not equipped with such brakes as would enable the driver thereof to stop it within the distances specified in the foregoing instruction, then the defendant Consolidated Freight Lines, Inc., was negligent, and if such negligence was the sole proximate cause of the accident you will return your verdict in favor of the defendant Pacific Northwest Public Service Company.''

The purpose of these two instructions taken together seems to be to advise the jury that if the truck company failed to have its vehicle equipped with brakes as required by law and if such failure was the sole proximate cause of the accident then the street car company would not be liable, but that only the Consolidated Freight Lines, Inc., would be liable for the injury. Neither the plaintiff nor the appellant in their pleading allege that the accident was caused by the negligence of the defendant truck company in failing to have its truck equipped with proper or adequate brakes. Therefore the instructions would have permitted the jury to find upon an issue not raised by the pleadings. By a mere glance we can see that it would be material for such an allegation to be made if reliance was to be placed thereon, for the interested parties would doubtless have an opportunity to examine the truck and ascertain whether it was properly equipped with brakes. While it may have been a material matter had it been pleaded and made an issue in the case, it was not proper for the court to instruct upon a question

which was not an issue both by the pleadings and the evidence. See *Schropshire v. Pickwick Stages,* 85 Cal. App. 216 (258 P. 1107). There the court held, in construing code provisions similar to ours, that the allegation to the effect that the accident was caused solely by the negligence of a third party was new matter constituting an affirmative defense which brings into the case new matter not raised by the complaint.

In 45 C. J. 1084, § 653 we find:

"Where, however, specific acts of negligence are relied on for recovery, they must be specifically pleaded. And where general allegations of negligence are followed by particular statements of specific acts of negligence, unless it appears that the general allegations were intended to cover acts other than those specifically alleged, the general allegations are qualified and restricted by the particular ones, and the sufficiency of the complaint to allege actionable negligence must be tested by such special allegations, and not by any general averment of negligence which the complaint may contain, although the general allegation of negligence would, in the absence of such special allegation, be sufficient to make a prima facie case of negligence."

See also *Knahtla v. O. S. L. Ry.,* 21 Or. 136, 146 (27 P. 91); *Lieuallen v. Mosgrove,* 33 Or. 282 (54 P. 200).

The instructions requested do not embrace all the essential elements of the terms of the brake testing statute under consideration.

Sec. 70, subd. (e), Ch. 360, General Laws 1931, provides as follows:

"(e) The brakes of a motor vehicle or combination of vehicles shall be deemed adequate when, on a dry, hard, approximately level stretch of highway, free from loose material, such brakes shall be capable of stopping the motor vehicle or combination of vehicles, when

operating at speeds set forth in the following table * * * ''

It is not shown that the uneven street railway track was a proper place to test the brakes of the truck.

There was no error in refusing the requested instructions Nos. 21 and 22.

■ Assignment of error No. 3 is predicated upon the refusal of the court to instruct the jury as requested by the appellant in its requested instruction No. 26 as follows:

"If you find from the evidence that the driver of the truck, in the exercise of reasonable care, could and should have turned the truck to the left as it was being driven across the intersection, and that by so turning the truck, he could have avoided the accident, then he was guilty of negligence, and if you find that such negligence was the sole proximate cause of the accident you will return your verdict in favor of the defendant Pacific Northwest Public Service Company."

It is submitted by appellant and the testimony tended to show that, when the street car first came in contact with the motor car at or in front of the rear wheel, the body of the truck and the housing of the rear wheel of the motor truck were scraped and indented by a slight friction between the side of the motor truck and the front of the street car, but that the main force came when the front of the street car came in contact with the trailer and it pulled the street car off the tracks about a foot and rocked the same, the movement of which it is claimed threw the plaintiff from the seat. The distance between the first slight impact and the main impact was some 10 or 12 feet back of the first marks on the motor truck indicating, as it is claimed by appellant, that the truck was almost at a stop, and that if the truck driver had swerved to the

left the main force of the impact would have been avoided.

It would seem that, in order for the appellant to require the truck driver to turn the truck to the left as it was being driven across the intersection, the jury should have been informed that if, after the truck driver saw the street car and perceived the danger in time to avoid collision and in the exercise of reasonable care he could and should have turned the truck to the left so as to have avoided the accident, then there would have been some ground for negligence upon the part of the driver of the truck if he failed to do so.

The duty of the driver of the truck and the duty of the operator of the street car to avoid the collision, if reasonably possible, were alike. The instruction, however, suggests the last clear chance. The appellant did not plead that the defendant truck company, after perceiving the danger and in time to avoid it, negligently failed to turn the automobile to the left or to so plead as to invoke the "last clear chance doctrine". *Stewart v. P. R. L. & P. Co.*, 58 Or. 377, 381 (114 P. 936), where the case of *Drown v. Northern Ohio Traction Co.*, 76 Ohio St. 234 (81 N. E. 327, 10 L. R. A. (N. S.) 421, 118 Am. St. Rep. 844) is cited. *Marshall v. Olson*, 102 Or. 502, 511 (202 P. 736), where Mr. Justice Burnett quotes from *Stewart v. P. R. L. & P. Co.*, as follows:

"In order to invoke the 'last clear chance doctrine', plaintiff must plead and prove that defendant, after perceiving the danger and in time to avoid it, negligently failed to do so."

See *Emmons v. S. P. Co.*, 97 Or. 263, 271 (191 P. 333); *Sanders v. Taber*, 79 Or. 522, 524 (115 P. 1194). The learned trial judge plainly instructed the jury in

substance that it was the duty of this defendant to exercise reasonable care and precaution, such care and precaution as a reasonably prudent person would exercise under the same circumstances. That reasonable care and precaution involved the idea of care commensurate with the danger involved. That it was the duty of the defendants to exercise reasonable care and precaution to keep a lookout and to have its vehicle in reasonable control in view of a known approach to a known intersection and of the possible traffic which might be there. (Recapitulating) Reasonable care then as to looking out, keeping a lookout. Reasonable care and prudence as to the matter of speed and reasonable care and prudence as to the matter of control.

It would seem that the instruction as to the reasonable care and prudence as to the matter of control of the car would in substance be the same as the requested instruction in regard to turning to the left; in other words the requested instruction was practically covered by the charge given by the court, although in different language. It is apparent from the instructions of the court that the dominant issue of each of the defendant's negligence was fairly and fully submitted to the jury. There was no error in the court refusing to give the requested instruction number 26. See *Hendricks v. P. E. P. Co.*, 134 Or. 366, 375 (289 P. 369, 292 P. 1094); *Gano v. Zidell*, 140 Or. 11 (10 P. (2d) 365, 12 P. (2d) 1118).

■ Assignment of error No. 4 is predicated upon the court's refusal to instruct the jury as requested by appellant in its requested instruction 32 as follows:

"In considering the question of damages, if any, to be allowed in this case, I instruct you that you are not to award or allow plaintiff any sum whatsoever

as compensation for mental anguish, mental suffering or mental condition not based upon any physical or bodily injury.''

And also the refusal to instruct the jury as requested by appellant in its requested instruction No. 33 as follows:

''In considering the question of damages, if any, to be allowed the plaintiff as compensation in this case, you are not to consider or allow plaintiff any compensation whatsoever for or on account of any nervous condition or delay in his recovery caused by or due to the pendency of a claim for damages and/or litigation arising or growing out of the accident involved in this case.''

Appellant invokes the rule laid down in *Maynard v. Or. Ry. Co.*, 46 Or. 15 (78 P. 983, 68 L. R. A. 477), that mental anguish, mental suffering or mental condition which is not based upon a physical or bodily injury cannot be a basis of damages in a personal injury suit.

The plaintiff as a witness in his own behalf testified as bearing on his injuries, that he was of the age of twenty-nine years, was a clerk and also a musician; that prior to the accident he had never been sick except for about two weeks; had never been nervous and had always been able to carry on his work; that at the time of the accident he was a passenger on the street car, was sitting in the car when he heard a crash and remembered flying through the air; that he did not remember much about it after that until he got up to the hospital. At the hospital he found he could not move his right arm and right leg and he had a great deal of pain at the back of his neck, the base of his spine and his right shoulder. He thinks he was discharged from the hospital some time late in December. It was two or three weeks that he continued in this

paralyzed condition of the right arm and right leg and then found that he could move his arm and leg; that he suffered much pain during that time; his head ached, his back ached and his right shoulder was in pretty near constant pain. He went from the hospital to his home and went to bed and has been up and down ever since but has not been able to perform any kind of work. He testified in substance:

"Q—What trouble have you had? What has kept you from it? That has been about a year and five months now.

A—I have had continual pain in the lower part of my back and these headaches come back on me from day to day and I get to the point where I can hardly see from them. * * *

Q—What effect does it have on you when you undertake to work? Just tell the jury why it is you can't perform some work.

A—I can't stay with it long enough to accomplish anything.

Q—Well, why is that?

A—You can't work with your head bursting open to such a point that you can hardly see."

The medical experts differed somewhat in describing plaintiff's condition. We do not understand that Dr. Selling, a witness for appellant, testified that plaintiff's condition was not brought about as the result of the accident; if there was any disagreement among the experts and of the plaintiff, we think it was a question for the jury to determine under the instruction of the court.

Plaintiff stated that exercise tired him very quickly. We think the testimony tended to show that the condition of the plaintiff, of which he complains, was the result of the accident; that his mental anguish, mental

suffering and mental condition was based upon his physical or bodily injury and that the jury could only allow such damages as the plaintiff proved he had received as the direct and proximate result of the negligence on the part of the defendant. The jury could consider only such sum as would compensate plaintiff for pain and suffering he has endured or may endure as the direct and proximate result of the negligence of defendants. The element of future damages or future suffering and whether or not the injury is permanent, the jury was permitted to consider. The jury was instructed that they could not speculate but must be governed and guided by the evidence. The charge required that any damages allowed must be for injuries "received as the direct and proximate result of the negligence, if any, upon the part of the defendants". The charge of the court would preclude the jury from allowing plaintiff any compensation "for mental suffering or mental condition not based upon any physical or bodily injury," or any compensation "for or on account of any nervous condition or delay in his recovery caused by or due to the pendency of a claim for damages or litigation arising or growing out of the accident," or on account of any nervous condition caused by financial affairs or other like worries. In other words the gist of the instruction requested was covered by the charge of the court.

In *Adams v. Brosius*, 69 Or. 513, 517 (139 P. 729, 51 L. R. A. (N. S.) 36), cited by appellant we read:

"The doctrine that mental suffering accompanying personal injury or physical pain is always the subject of compensation is so firmly implanted in the jurisprudence of the several states of the Union as to become a legal maxim."

We do not think the rule contended for by appellant is applicable or that there was any error of the court in refusing to give instructions numbers 32 and 33 of thirty-seven instructions requested by the appellant, the refusals to give four of which are assigned as error. Whether the court had sufficient time during the trial of a case to select any instruction that might seem to have bearing upon the case and give it sufficient consideration is not necessary for us to determine.

From a careful reading of the charge given to the jury by the learned trial judge, which we think fairly and plainly submitted the case to the jury, and the consideration of the matters presented, we find no error in the record. The judgment of the circuit court is therefore affirmed.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.